Nathan S. JACOBSON,
Plaintiff-Appellant,

v.

TAHOE REGIONAL PLANNING AGEN-
CY, a political subdivision of the States
of Nevada and California, the State of
Nevada, and the County of Washoe, De-
fendants-Appellees.

Melvin F. JONES, Verona M. Jones, his
wife, Leo D. Wyrsch, Cora E. Wyrsch, his
wife, Paul W. Gould, Lola E. Gould, his
wife, Joseph Trinchero, Delores G.
Trinchero, his wife, Paul Williams and
Lanai Corporation, a California Corpora-
tion, Plaintiffs-Appellants,

v.

TAHOE REGIONAL PLANNING AGEN-
CY (T.R.P.A.), a political subdivision of
the States of Nevada and California, Cal-
ifornia Tahoe Regional Planning Agen-
cy, the State of California, Placer County
and Eldorado County, Defendants-Appel-
lees.

LAKE COUNTRY ESTATES, INC., a
corporation, and Country Club Estates,
a partnership, Plaintiffs-Appellants,

v.

TAHOE REGIONAL PLANNING AGEN-
CY, County of El Dorado, and State of
California, et al., Defendants-Appellees.

LAYTON–TAHOE PROPERTIES,
Plaintiff-Appellant,

v.

TAHOE REGIONAL PLANNING AGEN-
CY, State of California, State of Nevada,
County of Placer, and United States of
America, Defendants-Appellees.

Nos. 75–2400, 76–1182, 76–1289
and 76–1608.

United States Court of Appeals,
Ninth Circuit.

Aug. 5, 1977.

Gary A. Owen, South Lake Tahoe, Cal., E. Clement Shute, Jr., Asst. Atty. Gen., Sacramento, Cal., Reginald Littrell, Auburn, Cal., James H. Thompson, Chief Deputy Atty. Gen., Carson City, Nev., George R. Hyde, Atty. U. S. Dept. of Justice, Washington, D. C., argued, for defendants-appellees.

Gary H. Moore, of McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., Richard A. Clarke, of Rockwell, Fulkerson & Barry, San Rafael, Cal., argued, for plaintiffs-appellants.

Before WRIGHT, GOODWIN and ANDERSON, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge: *

On this appeal we are once more concerned with that "centaur of legislation,"[1] an offspring of both state and federal law, the Tahoe Regional Planning Compact ("Compact"). Appellants complain that zoning ordinances of the Tahoe Regional Planning Agency ("TRPA"), a separate legal entity created under the provisions of the Compact, amount to an inverse condemnation or "taking" of their lands.

In each of the four consolidated cases presently on appeal, the underlying complaint was dismissed by the district court for failure to state a claim upon which

---

* Because of the number and complexity of the issues, all members of the panel participated in the writing of this opinion.

1. Comment, "Federal Question Jurisdiction to Interpret Interstate Compacts," 64 Geo.L.J. 87, 110 (1975).

relief can be granted.[2] Additionally, some defendants were dismissed from each suit. Each determination is appealed. We vacate two judgments, two others we affirm in part and reverse in part, and all four appeals are remanded for further proceedings.

## I.

### THE TAHOE REGIONAL PLANNING COMPACT

Some background information is necessary for an understanding of this opinion. In 1968, California and Nevada entered into a compact to create a regional agency with powers to regulate and control development within the Lake Tahoe Basin. *Cal.Gov't Code* § 66800 *et seq.* (West Supp.1974); *Nev.Rev.Stat.* § 277.190 *et seq.* (1973). The Compact was consented to by Congress in December 1969.[3] Pub.Law 91–148, 83 Stat. 360.

The governing body of the TRPA was charged with adopting ordinances, rules, regulations and policies to effectuate a regional plan setting minimum standards for water purity, zoning, shoreline development and the like.[4] the TRPA enacted a comprehensive Land Use Ordinance ("LUO"), effective February 10, 1972, in discharge of its duties under the Compact. This LUO limited the permitted uses of certain lands within the Basin, including those owned by appellants.

Under the LUO, "use districts" were established.[5] Land belonging to appellants and previously zoned as residential, multiple residential, or commercial was rezoned as "General Forest District," [6] "Recreation District," [7] or "Conservation Reserve." [8] As a generalization, very limited residential and no tourist residential or commercial use was to be made of land zoned as one of the three districts. Among other permitted uses were these: hiking trails and campgrounds, stables, recreation camps, skiing facilities, timber growing, livestock grazing, and electrical substations. Additionally, outdoor recreation concessions and educational facilities were permitted in the Recreation District.

Appellants claim that these restrictions deprive them of "all beneficial use or development" of their land and they request injunctive, declaratory, and monetary relief. Their claims are based on the Fifth and Fourteenth Amendments to the Constitution and on the just compensation provisions of the respective state constitutions.

## II.

### DETERMINING THE PROPER CAUSE OF ACTION

(a) *The Compact as Federal Law.*

Before we can determine whether appellants' complaints will withstand a Fed.R. Civ.Pro. 12(b)(6) motion, we must determine

---

**2.** Although the ultimate outcome was the same, the basis for dismissal varied among the consolidated cases. In *Jacobson v. TRPA*, No. 75–2400, the district judge held that Jacobson had not set forth facts sufficient, if proved, to rebut the presumption of constitutionality accompanying the acts of the TRPA. See *Western International Hotels et al., v. TRPA et al.*, 387 F.Supp. 429 (D.Nev.1975). Jacobson amended his complaint but his suit was subsequently dismissed for lack of standing.

The other three cases on appeal were disposed of in one unreported consolidated opinion in which the district court ruled that, although the complaints stated facts sufficient for an action of inverse condemnation, such an action could not be brought against the TRPA because it lacked authority to condemn.

**3.** Article I, § 10 cl. 3 of the United States Constitution provides in part:

"No State shall, without the Consent of Congress . . . enter into any Agreement or Compact with another State . . . ."

**4.** Compact, Art. VI(a).

**5.** TRPA Ordinance No. 4, section 7.00.

**6.** *Id.* section 7.20.

**7.** *Id.* section 7.30.

**8.** *Id.* section 7.110.

under what law and what theories appellants can proceed to trial. The complaints are filled with a variety of constitutional references, state and federal, and allege actions of inverse condemnation and, more generally, of "taking."

■ Although the Compact is in essence a bi-state contract,[9] this circuit had held that congressional consent transforms the Compact into a law of the United States. *League to Save Lake Tahoe v. TRPA*, 507 F.2d 517, 519 (9th Cir. 1974), *cert. denied*, 420 U.S. 974, 95 S.Ct. 1398, 43 L.Ed.2d 654 (1975).[10] Because the Compact is a federal law, the agency functioning under its terms is operating under federal law, although it is not necessarily a federal agency.[11]

■ Because it is the action of the TRPA which is the basis of these cases and because the TRPA acted under powers given it by the terms of the Compact, we are of the opinion that no cause of action has been stated under any *state* laws. Those causes of action grounded on the just compensation provisions of the California and Nevada state constitutions were therefore properly dismissed for failure to state a claim upon which relief can be granted.

(b) *Actions Under the United States Constitution.*

■ The complaints also mentioned the due process clause of the Fourteenth Amendment which safeguards personal rights against arbitrary and oppressive state action. Thus, if the TRPA's enactment of the LUO was such an over-zealous use of its police powers as to amount to a taking of appellants' property, it might, in the proper circumstances, fall under the due process clause of the Fourteenth Amendment.

This amendment applies also to acts of political subdivisions of the state. *Lowe v. Manhattan Beach City School District*, 222 F.2d 258 (9th Cir. 1955) (school district); *Miller v. County of Los Angeles*, 341 F.2d 964 (9th Cir. 1965) (county). Whether a cause of action under the Fourteenth Amendment can be stated against the TRPA would turn on whether it is an agent or political subdivision of the state.

Because of the complex nature of the Compact and the difficulties inherent in categorizing those operating under it, the district courts did not decide whether the agency was an arm of the state. We also do not find it necessary to decide this issue.

---

9. See discussion of Frankfurter, J., dissenting in *Petty v. Tennessee-Missouri Bridge Commission*, 359 U.S. 275, 283–89, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959).

10. In so doing the court chose between the two principal species of legislation: federal and state. As will be developed *infra*, this characterization is not without its difficulties. At least one commentator has suggested that it may be more fruitful to recognize compacts as a third and distinct species: interstate legislation. This would

"permit, although not require, the inference that interstate agencies created by compact are subdivisions of neither the state nor the federal government, but are political entities *sui generis*, exercising a limited sovereignty distinct from that of the states which have delegated power to them, and from the United States."

Engdahl, "Construction of Interstate Compacts: A Questionable Federal Question", 51 Va.L. Rev. 987, 1040 (1965).

11. As the California United States District judge below noted, there is insufficient federal control or involvement to hold the United States responsible for TRPA's actions. Additionally, the Compact itself provided that TRPA was to be a separate legal entity. Compact, Art. III(a). More than this, however, special consideration should be given to the unique nature of interstate compacts. As noted in Leach R. & Sugg, Jr. R., *The Administration of Interstate Compacts* 22 (1959):

"Agencies established by interstate compact are identified administratively with the party states rather than with the federal government. They may develop close relations with federal departments . . . but they are no more a part of the federal administrative organization than any ordinary department of a state government. The use of compacts is still too new, however, for any well-defined concept of the proper relations between a state and a compact agency to which it subscribes to have developed."

It is not relevant in deciding whether a cause of action is stated against the states because, as discussed hereafter, the states were properly dismissed as defendants because they did not waive their Eleventh Amendment immunity from suit.

■ The due process clauses of the Fifth and Fourteenth Amendments are sufficiently similar for analytical purposes so that if a cause of action were stated under the Fifth Amendment, a claim under the Fourteenth would also be stated, if there were a proper defendant against whom to state it. A separate discussion of a possible Fourteenth Amendment claim is therefore not necessary for purposes of due process analysis. Thus we need not further refine the characterization of the TRPA.

We now consider the possibility of a claim under the Fifth Amendment to the Constitution. For our purposes there are two relevant clauses: the due process and the just compensation (condemnation) clauses. It is our opinion that the two, although relying on substantially the same evidence when a suit based on either is brought in the context of this factual situation, provide the bases for two separate possible causes of action.

■ We find that a cause of action for inverse condemnation cannot be stated against the TRPA because it lacks condemnation authority.[12] We do not find, however, that this requires dismissal of appellants causes of action. The same facts alleged by appellants do form the basis for a claim of denial of due process under the Fifth Amendment for an improper "taking" of their land. This court has stated:

The due process clause, in its procedural as opposed to its substantive aspect, guarantees plaintiffs that their liberty and property interests will not be invaded by the government except insofar as they are given an opportunity to challenge the purported justification (legal, factual, or both) of the invasion. Thus, to make out a prima facie claim that they have been denied due process, plaintiffs must establish two elements: (1) that their liberty or property interests have been invaded by the government without an opportunity to challenge that invasion, and (2) that the purported justification for the invasion is at least plausibly disputable (otherwise an opportunity to challenge that justification would be an empty formality).

*Rainbow Valley Citrus Corp. v. Federal Crop Insurance Corp.*, 506 F.2d 467, 469 (9th Cir. 1974).

Perhaps an argument could be made that, because the TRPA is not a federal agency, it is not "the government" and therefore the Fifth Amendment is inapplicable, just as the Fourteenth Amendment is inapplicable if the TRPA is not a state agency. This reasoning, however, could lead to the untenable conclusion that the TRPA is immune from suit because of its somewhat unique status: part state and part federal but not entirely either.

■ We conclude that the fact that the Compact is a federal law is sufficient to bring the TRPA within the reach of the Fifth Amendment. As the Supreme Court has stated:

Due process of law in [the Fifth Amendment] refers to that law of the land which derives its authority from the legislative powers conferred upon Congress by the Constitution of the United States, exercised within the limits therein pre-

---

**12.** TRPA was given only the power to regulate, not the power to condemn. The statutory grant of the power of eminent domain must be indicated by express terms or by clear implication. *Western Union Tel. Co. v. Penn. R.R.*, 195 U.S. 540, 569, 25 S.Ct. 133, 49 L.Ed. 312 (1904). *See also Hudson Water Co. v. McCar-* ter, 209 U.S. 349, 355, 28 S.Ct. 529, 52 L.Ed. 828 (1908); *Atlantic Coast Line R. Co. v. North Carolina Corp. Comm'n*, 206 U.S. 1, 20, 27 S.Ct. 585, 51 L.Ed. 933 (1906). The delegation of police power to TRPA was neither an express grant of condemnation power nor one by implication.

scribed, and interpreted according to the principles of the common law.

*Hurtado v. California*, 110 U.S. 516, 535, 4 S.Ct. 111, 120, 28 L.Ed. 232 (1884). The Compact has been held to be a "law of the land" and was made such by means of powers delegated to Congress in Art. I, section 10, cl. 3 of the constitution.

 Were this not enough, federal courts could call upon their inherent "judicial inventiveness" [13] to meet this new situation. The "flexibility and capacity for growth and adaptation is the peculiar boast and excellence of the common law." 110 U.S. at 530, 4 S.Ct. at 118. Federal common law doctrines [14] are not frozen in form and reach, and courts must "take account of the evolution of common law principles in the light of current perceptions and needs." *United States v. Schoefield*, 150 U.S.App. D.C. 380, 465 F.2d 560, 561, *cert. denied*, 409 U.S. 881, 93 S.Ct. 210, 34 L.Ed.2d 136 (1972). The due process clause was intended to protect the individual from arbitrary exercise of the powers of the government. This common-sense principle will not be circumvented by forms and procedures, unknown to our ancestors in England and therefore for which there is no age-old basis in the common law tradition.

## III.

## DETERMINING WHETHER A CLAIM HAS BEEN STATED

Having decided that appellants can state a claim under the Fifth Amendment due process clause, the next inquiry is whether they have, in fact, done so. We first determine what standard of review applies.

In the *Jacobson* case, the district judge noted that the complaint challenged the

constitutionality of an administrative enactment. Relying on *Pacific States Box & Basket Co. v. White*, 296 U.S. 176, 56 S.Ct. 159, 80 L.Ed. 138 (1935), he held that the acts of an administrative body are entitled to the same presumption of constitutionality accorded legislative acts and that a stricter standard of pleading was therefore applicable when judging a motion to dismiss. *See* 387 F.Supp. at 436–38.

> The burden is not sustained by making allegations which are merely the general conclusions of law or fact. . . .
> Facts relied upon to rebut the presumption of constitutionality must be specifically set forth.

296 U.S. at 185, 56 S.Ct. [159], at 163, *quoted* in 387 F.Supp. at 437.

Under this standard of pleading, none of the complaints in any of the four consolidated cases on appeal would withstand a motion to dismiss because they lack specific factual allegations which, if proved, would rebut the presumption of constitutionality. Although *Pacific States* has never been explicitly overruled, we do not believe that it states the present law applicable to a motion to dismiss for failure to state a claim. *Pacific States* was decided two years before the promulgation of the Federal Rules of Civil Procedure and we find no precedent in this circuit for its application in this context since that time.

In *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), the Supreme Court explained the modern philosophy concerning pleadings:

> . . . the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain state-

13. *Textile Workers Union of America v. Lincoln Mills of Alabama*, 353 U.S. 448, 465, 77 S.Ct. 923, 1 L.Ed.2d 972 (1957) (Frankfurter, J. dissenting).

14. Clearly there is a "federal common law" even if not a "federal general common law." See Wright, *Federal Courts*, § 60 at 214 (1963) (discussing Justice Brandeis' same-day statements in *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed.2d 1188 (1938) and

*Hinderlider v. La Plata River & Cherry Creek Ditch Co.*, 304 U.S. 92, 110, 58 S.Ct. 803, 82 L.Ed. 1202 (1938). Federal common law binds the states through the supremacy clause and is a law of first resort, subject to revisions by subsequent legislation. See Note, 82 Harv.L. Rev. 1512 (1969); Monaghan, "Foreword: Constitutional Common Law," 89 Harv.L.Rev. 1 (1975).

ment of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. The illustrative forms appended to the Rules plainly demonstrate this. Such simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues. . . . The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.

355 U.S. at 47–48, 78 S.Ct. at 103.

Under the federal rules, a complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim. 2A *Moore's Federal Practice* ¶ 12.08 (1975). Pleadings are to be liberally construed.

Under this standard of pleading, which we apply in this case, both district judges found the complaints to be adequate to withstand the 12(b)(6) motion.[15] We agree. The allegations of taking, even though phrased in terms of inverse condemnation, do evidence that appellants complained that the police powers of the TRPA were improperly exercised and that they relied on the Fifth Amendment.

We therefore reverse the district courts' rulings on this point. Although ap-

pellants may wish to amend their complaints on remand to the district court in light of our opinion, we do believe that their complaints are sufficient under the federal rules to state a claim upon which relief may be granted.[16]

## IV.

### DISMISSAL OF THE DEFENDANTS

Appellants also appeal from the district courts' dismissals of all party defendants except the TRPA. Among those dismissed were counties in the Lake Tahoe area, the states of California and Nevada, the United States and the individual members of the governing body of the TRPA at the time the LUO was enacted. We shall discuss them individually.

*(a) The Counties.*

Fed.R.Civ.Pro. 20(a) allows joinder of parties as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief arising out of the same occurrences and if any question of law or fact common to all defendants will arise in the action. Appellants joined the counties because they have enforcement authority of the Tahoe Regional General Plan under Art. V(c) of the Compact (along with the TRPA, the states and the cities).

Appellants' cause of action arises from the enactment of the LUO. They seek monetary damages and a declaration of their rights under the ordinance. There is no reason to believe that the counties would attempt to enforce the LUO were it declared invalid by a court of law. Indeed, the counties appear favorable to appellants' development plans.

---

**15.** The California judge was clear on this point. The Nevada judge was less emphatic, stating: "It would appear, nevertheless, that these essentially conclusory complaints might withstand a motion to dismiss in the usual case." 387 F.Supp. at 436. He went on to apply the *Pacific States* standard. *Id.* at 437. We take his language to imply, however, that he would have found the complaints adequate in the usual case.

**16.** We anticipate that such amendments might take the form of omitting the inappropriate state claims, among other matters. Additional-

ly, borrowing again from the condemnation literature, we note that mere diminution of value will not suffice to establish a "taking." *Hadacheck v. Sebastian*, 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348 (1915); *HFH Ltd. v. Superior Court*, 15 Cal.3d 508, 125 Cal.Rptr. 365, 542 P.2d 237 (1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). Clearly, however, a taking can occur even when land is not physically appropriated by another. 2 *Nichols' The Law on Eminent Domain* § 6.3 (1976).

Furthermore, the TRPA is not an agent of the counties which have no financial liability for any monetary damages that might be assessed. Their financial obligations are fixed by provisions of the Compact.

Appellants can obtain complete relief without joining the counties in their suits. The counties were therefore properly dismissed.

(b) *The States.*

California and Nevada were also joined as defendants, either on the theory that the TRPA was a political subdivision of the states, or alternatively that the zoning was a joint undertaking by the states and the TRPA. The district judges did not decide these issues, holding instead that any adjudication of condemnation would mean that the TRPA had exceeded the authority delegated to it and thus its actions would not be regarded as those of the states. *See* 387 F.Supp. at 439.

■■■■■ We decide on another ground that the states are not proper parties.[17] The issue of the Eleventh Amendment as a bar[18] to suing the states was raised by at least one party below. Even had it not been raised, "the Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar" that it would be proper to consider it for the first time on this appeal. See *Edelman v. Jordan,* 415 U.S. 651, 678, 94 S.Ct. 1347, 1362, 39 L.Ed.2d 662 (1974); *Ford Motor Co. v. Dept. of Treasury,* 323 U.S. 459, 467, 65 S.Ct. 347, 89 L.Ed. 389 (1945).

■■■ The Eleventh Amendment has been held to immunize a state from suits brought in federal court for money claims payable from a state treasury by the state's own citizens as well as by citizens of a foreign state. *Edelman,* 415 U.S. at 663, 94 S.Ct. 1347. Although this is an immunity which the state may waive at its pleasure, the conclusion that there has been a waiver of immunity from suit will not be lightly inferred. *Petty v. Tennessee-Missouri Bridge Commission,* 359 U.S. 275, 276, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959).

Relying on *Petty,* appellants allege that California and Nevada waived their immunity to suit by enacting the Compact. In *Petty,* Congress approved a compact between Tennessee and Missouri containing a clause giving the Commission the right "to contract, and to sue and be sued." In some respects this language is similar to that in Art. VI(b) and VI(e) of the Tahoe Compact allowing the TRPA to bring suit and be a party in actions brought in state and federal courts of the state where the violation of the general plan occurred or where the property was affected.

The difference between *Petty* and this case is that in *Petty,* Congress, in approving the compact, attached a proviso that its approval should not be construed as affecting, impairing, or diminishing federal court jurisdiction over matters arising under the compact. No similar proviso was attached when Congress approved the Tahoe Compact. The added proviso became critical when the Supreme Court determined that Tennessee and Missouri had waived their immunity to suit. The Court stated:

The States who are parties to the compact by accepting it and acting under it *assume the conditions that Congress under the Constitution attached.* So if there be doubt as to the meaning of the sue-and-be-sued clause in the setting of the compact prior to approval by Con-

---

**17.** This court may affirm on any ground squarely presented on the record. *Jaffke v. Dunham,* 352 U.S. 280, 281, 77 S.Ct. 307, 1 L.Ed.2d 314 (1957); *M.O.S. Corp. v. John I. Haas Co.,* 375 F.2d 614, 617 (9th Cir. 1967).

**18.** The Eleventh Amendment provides:
"The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens, or Subjects of any Foreign State."
For a fuller discussion of express and implied waiver of Eleventh Amendment immunity *see* Comment, " *Edelman* and *Scheuer*: The Relationship Between the Eleventh Amendment and Executive Immunity," 58 Marq.L.Rev. 741 (1975).

gress, the doubt dissipates *when the condition attached by Congress is accepted and acted upon by the two States.*

359 U.S. at 281–82, 79 S.Ct. at 790 (emphasis added and footnote omitted).

Discussing *Petty* and *Edelman* the Court emphasized the presence of congressional intent, stating:

> The question of waiver or consent under the Eleventh Amendment was found in those cases to turn on whether Congress had intended to abrogate the immunity in question, and whether the State by its participation in the program authorized by Congress had in effect consented to the abrogation of the immunity.

415 U.S. at 672, 94 S.Ct. at 1360.[19] Appellants have indicated no language attached by Congress in approving the Compact, nor have we found any, which indicates that Congress intended to abrogate the immunity of the states. Any waiver must therefore be found in the language of the Compact itself.

■■■■■■ In oral argument, counsel referred us to Article VI(b) of the Compact as indicative of a waiver of immunity. This provision provides in part that the TRPA will be deemed a political subdivision of both states for purposes of suit. When read in conjunction with Art. III(a) of the Compact, indicating that the TRPA was to be a separate legal entity, however, it appears that Art. VI(b) was intended to operate as a grant of state court jurisdiction over the TRPA. The provision is admittedly not without ambiguity. The question of waiver is one of federal law, however, 359 U.S. at 279, 79 S.Ct. 785. The existence of waiver is not to be lightly inferred. Therefore, in the light of a lack of an express waiver of suit by the contracting states, we will not imply it here.

(c) *The United States.*

J. BLAINE ANDERSON, Circuit Judge:

■■■■■ The United States was named as a party defendant in No. 76–1608 (*Layton-Ta-*

hoe v. TRPA ). That case was originally instituted in the California Superior Court and was removed to the United States District Court on motion of the government. The district court dismissed the United States from the action, finding that the TRPA was not an agency of the government and that there was no "authority which permits the federal defendants to be sued."

The involvement of the United States with the Compact is limited to two different aspects. First, in 1969, Congress, by enacting Public Law 91–148, gave its approval and consent to the Compact entered into by California and Nevada. Second, the government's present involvement in the Compact is found in Article VIII, Section 3 of the Compact, which allows the President of the United States to appoint a non-voting representative to the governing body. We agree with the district court that the approval of the Compact by Congress did not thereby establish TRPA as an agency of the United States and also that the government's limited present involvement with the Compact is insufficient to hold the United States responsible for TRPA's actions.

■■■■■ Moreover, there is no language in the Compact indicating that Congress gave its consent to allow the United States to be sued. The United States cannot be sued without its consent. *Dugan v. Rank,* 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963). It rests with Congress to determine whether the United States may be sued, and, if so, in what court. *Minnesota v. United States,* 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235 (1939). Congress, in enacting the Tucker Act (see 28 U.S.C. §§ 1346 and 1491), which waived sovereign immunity for certain claims, provided for jurisdiction in the federal district court or the United States Court of Claims, but it did not subject the United States to suit in a state court. This suit was begun in a state court and if that state court lacked jurisdiction, the federal court acquired none upon re-

---

**19.** See also *League to Save Lake Tahoe v. TRPA et al.,* 507 F.2d 523, n.13 (9th Cir. 1974), *cert. denied,* 420 U.S. 974, 95 S.Ct. 1398, 43 L.Ed.2d 654 (1975).

moval, *Minnesota v. United States, supra,* even where the federal court would have had jurisdiction had the suit been commenced in federal court. *Lambert Run Coal Co. v. Baltimore & Ohio R. Co.,* 258 U.S. 377, 42 S.Ct. 349, 66 L.Ed. 671 (1922).

The district court properly dismissed the United States from this action as it was without jurisdiction over the United States where the United States did not give its consent to be sued.

### (d) *Individual Members of the TRPA Governing Board.*

The individual members of TRPA's Governing Board and its Executive Director were named as party defendants in No. 76–1289 (*Lake Country Estates, Inc. v. TRPA*). These individuals are named in appellant's Seventh and Eighth Causes of Action, which allege that they, as members of TRPA's Governing Board, violated appellant's constitutional rights by enacting and implementing the General Plan and Land Use Ordinance, thereby taking appellant's property without due process of law and without just compensation. The district court dismissed the complaint as to these individual defendants,[20] holding that "members of governmental bodies are immune from liability for damages arising out of their exercise of discretionary functions." (C.T. 186)

■ Before addressing the immunity issue, we must examine the jurisdictional basis of this action against these individual defendants. Appellant alleged jurisdiction under two statutes, 28 U.S.C. § 1331 and § 1343 (1970). Section 1343 is the jurisdictional statute for civil rights actions arising under 42 U.S.C. § 1983 (1970). In order to establish a claim cognizable under § 1983, appellant must show that he has been deprived of a right secured by the Constitution and that such deprivation was achieved under color of state law. *Adickes v. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

■ The acts complained of here arise solely out of the actions taken by these individuals in their capacity as members of TRPA's Governing Board and as the Executive Director of TRPA. Any action cognizable under § 1983 necessarily depends upon the source of powers given to these individuals as members of TRPA. This court, in *League to Save Lake Tahoe v. TRPA, supra,* held that the Compact is a matter of federal law. Because the Compact giving rise to TRPA is a matter of federal law, the jurisdictional requisite of state action is missing and no action can be stated under § 1983 against these individual members of TRPA.

■ Appellant also relied upon the federal question jurisdiction statute. 28 U.S.C. § 1331 (1970). This statute was used in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), in which the Court fashioned a federal cause of action for damages against federal officers for a violation of the Fourth Amendment. The Court implied a damages remedy directly from the Constitution and viewed it as an unsurprising and historically-indicated remedy:

> [I]t is . . . well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done.

403 U.S. at 395–96, 91 S.Ct. at 2004, *quoting* from *Bell v. Hood,* 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946) (footnote omitted).

In *Bivens* it did not matter whether the availability of money damages was necessary to enforce the Fourth Amendment or whether there was prior congressional authorization for such a remedy. Instead, the Court framed the question as whether petitioner was "entitled to redress his injury through a particular remedial mechanism

---

**20.** Defendants Doug Leisz and Jack W. Deinema were voluntarily dismissed without prejudice on January 4, 1974. C.T. 236–37.

normally available in the federal courts. *Cf. J. I. Case Co. v. Borak,* 377 U.S. 426, 433, 84 S.Ct. 1555, 1560, 12 L.Ed.2d 423 (1964)." 403 U.S. at 397, 91 S.Ct. at 2005.[21]

Appellant's claim is based on the Fifth, not the Fourth Amendment. We must therefore determine whether the rationale of *Bivens* can be extended to cover constitutional rights other than those based on the Fourth Amendment.

The Court's reasoning in *Bivens* is applicable to rights protected by other than the Fourth Amendment. Although the question whether to limit the applicability of *Bivens* has apparently not been decided by this circuit[22] and district courts deciding the question have differed in their dispositions, most courts of appeals have held that the remedy is not limited to Fourth Amendment violations alone.[23] We believe that this is the better reasoned view. Nothing in the language of *Bivens* or its rationale warrants a limitation solely to Fourth Amendment claims.

The rights protected by the Fifth Amendment due process clause are as fundamental as Fourth Amendment rights. The similar-

ities between the due process clause and the just compensation clause (for which a monetary remedy *is* provided) in the context of this case lends support to the appropriateness of recognition of this claim under the *Bivens* constitutional tort doctrine. By its allegation of jurisdiction under § 1331 it is clear that in addition to its § 1983 claim, the appellant is pursuing a separate claim which derives directly from the Constitution. Jurisdiction was properly asserted under 28 U.S.C. § 1331 (1970).

Turning now to the immunity issue, we note at the outset that the only difference between a § 1983 claim and a *Bivens* claim is that, where the constitutional infringer has acted under color of state law, § 1983 is applicable and where the constitutional infringer acts under color of federal law, a *Bivens* action can lie. Appropriately, courts have, for the most part, applied § 1983 law to *Bivens*-type actions. *See, e. g., Brubaker v. King,* 505 F.2d 534 (7th Cir. 1974). This court, in *Mark v. Groff,* 521 F.2d 1376 (9th Cir. 1975), stated:

> Accordingly, we agree with several courts of appeals in holding that the official

**21.** Justice Harlan's approach in his concurring opinion emphasized the availability of equitable remedies to redeem constitutional rights. This is a more helpful approach than that of the majority. *See* Note, 33 U.Pitt.L.Rev. 271 (1971). Equitable remedies can be employed against officials acting outside the scope of their constitutional authority.

**22.** In *Mark v. Groff,* 521 F.2d 1376, 1378 n. 1 (9th Cir. 1975), the court noted that the question of a damages claim was not raised and the court chose to take no position.

**23.** The following cases have been favorable to extending or have extended the applicability of *Bivens*:

*Davis v. Passman,* 544 F.2d 865 (5th Cir. 1977) (extending *Bivens* to cover Fifth Amendment due process); *Rodriguez v. Ritchey,* 539 F.2d 394 (5th Cir. 1976) (extending to cover *investigatory* officers who did not participate in the actual arrest); *White v. Boyle,* 538 F.2d 1077 (4th Cir. 1976) (retaliatory IRS investigation could give rise to a *Bivens* action); *Paton v. La Prade,* 524 F.2d 862 (3rd Cir. 1975) (First Amendment); *Dry Creek Lodge Inc. v. United States,* 515 F.2d 926 (10th Cir. 1975) (favorable dictum); *States Marine Line, Inc. v. Shultz,* 498 F.2d 1146 (4th Cir. 1974) (customs officers liable for improper performance of duties—Fifth

Amendment due process); *United States ex rel. Moore v. Koelzer,* 457 F.2d 892 (3rd Cir. 1972) (extended to Fifth Amendment rights to a fair trial); *Butler v. United States,* 365 F.Supp. 1035 (D.Hawaii 1973) (First Amendment); *Washington v. Brantley,* 352 F.Supp. 559 (M.D. Fla.1972) (favorable dictum).

The following district courts have limited *Bivens* to Fourth Amendment cases: *Smothers v. Columbia Broadcasting System,* 351 F.Supp. 622, 626 n. 4 (C.D.Cal.1972); *Davidson v. Kane,* 337 F.Supp. 922 (E.D.Va.1972).

The Second Circuit has considered the question to be open. *Wahba v. New York University,* 492 F.2d 96 (2nd Cir.), *cert. denied,* 419 U.S. 874, 95 S.Ct. 135, 42 L.Ed.2d 113 (1974). *But see Brault v. Town of Milton,* 527 F.2d 730, 734 (2nd Cir.), *rev'd en banc on other grounds,* 527 F.2d 736 (2nd Cir. 1975) (Fourteenth Amendment due process violation "comes within *Bivens'* sweeping approbation of constitutionally-based causes of action.").

The First Circuit has recently found no need to reach the question (in a Fourteenth Amendment context), thus leaving the possibility of extending *Bivens* in that circuit. *Comtronics, Inc. v. Puerto Rico Tele. Co.,* 553 F.2d 701 (1st Cir. 1977).

immunity doctrine in suits against federal officers for violation of constitutional rights is identical to the immunity doctrine applied in § 1983 suits. (Citations omitted.) 521 F.2d at 1380. We also will resort to § 1983 law to determine the applicability and extent of the immunity doctrine as it relates to the individual governing members of TRPA.

Our first task is to determine the type of functions undertaken by these individuals because that classification will control the type and extent of immunity accorded these individuals. Courts in dealing with the immunity doctrine have established three general classifications: judicial, *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); executive, *Scheuer v. Rhodes,* 416. U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); and legislative, *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). We must determine which, if any, of the classifications apply to these individual appellees. To begin this analysis we examine the powers accorded them under the Compact.

The Tahoe Regional Planning Compact was enacted "[i]n order to encourage the wise use and conservation of the waters of Lake Tahoe and of the resources of the area around said lake, . . ." [24] It was desired "that there be established an areawide planning agency with power to adopt and enforce a regional plan of resource conservation and orderly development, . . ." [25] The Compact created the Tahoe Regional Planning Agency as "a separate legal entity" and provided that its members shall be appointed by the various counties and cities in the area and from each state. To effectuate its purposes, the Compact mandated that "[w]ithin 90 days after the formation of the agency, the governing body shall adopt a regional interim plan" and also that "[w]ithin 18 months after the formation of the agency, the governing body shall adopt a regional plan." [26]

The powers given to the agency and its governing body are found in Article VI of the Compact. Section (a) thereof states, "The governing body shall adopt all necessary ordinances, rules, regulations and policies to effectuate the adopted regional and interim plans." Section (b) states "All ordinances, rules, regulations and policies adopted by the agency shall be enforced by the agency . . ." Section (e) states, "The agency shall police the region to ensure compliance with the general plan and adopted ordinances, rules, regulations and policies." Additionally, the agency was given enforcement power over the provisions of the interim plan and the regional general plan. *See* Compact, Art. V(c) and (f).

The above review of the agency's powers demonstrates that the agency possess legislative powers (adoption of ordinances, etc.) and executive powers (enforcement powers). The immunity afforded to those acting in these different capacities under § 1983 law is also different. [27] Absolute immunity is given to legislators for actions performed in their legislative function. *Tenney v. Brandhove, supra; Doe v. McMillan,* 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973). Executive officers, on the other hand, are given a qualified immunity for their actions dependent on "the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time" in question. *Scheuer v. Rhodes,* 416 U.S. at 247, 94 S.Ct. at 1692; *see also Navarette v. Procunier,* 536 F.2d 277 (9th Cir. 1976); *Mark v. Groff,* 521 F.2d 1376 (9th Cir. 1975).

The problem in the present case is that we cannot tell from the state of this record whether the acts complained of arise by virtue of the individuals' legislative powers or their executive powers. From our reading of appellant's complaint it appears that the principal basis of appellant's cause of action arises by virtue of the governing

---

**24.** Pub.L. 91–148, 83 Stat. 360 (statement of purpose).

**25.** Compact, Art. I(c).

**26.** Compact, Art. V(b) & (d).

**27.** *E. g., Thomas v. Younglove,* 545 F.2d 1171 (9th Cir. 1976).

body's enactment of the Land Use Ordinance; however, that enactment also carries with it the power to enforce the ordinance. Accordingly, we believe that it is proper to remand to the district court for further factual development as to the exact nature of the complained of actions.

■ We will offer some guidelines for the district court on remand. We believe that the individuals should be given absolute immunity as in § 1983 actions for any actions taken in their legislative function. We are aware that absolute immunity has only been given to state and national legislators under § 1983 law. *Doe v. McMillan, supra.* We also note that the question of immunity to be afforded to members of an interstate compact has never been squarely addressed. We believe that the nature of these compacts, in effect, establishes a "regional legislature." In an area such as Lake Tahoe the legislature of either state cannot effectively deal with problems that transcend state boundaries. Neither can Congress adequately deal with these regional problems because they require treatment by a body which will take into account regional interests, regional pride, and regional wisdom. As two authors have noted in writing about interstate compacts:

> Legislation is the answer and legislation must be coterminous with the region requiring control. . . . The regions are less than the nation and are greater than any one state. The mechanism of legislation must therefore be greater than that at the disposal of a single state.[28]

We see no reason not to accord these "regional legislators" the same immunity accorded their state and national counterparts.

■ We also believe that these individuals should be given the same qualified immunity espoused in *Scheuer v. Rhodes, supra,* for acts in their executive capacities. The problem in this case is compounded because these "regional legislators" are empowered with enforcement powers over their own legislation. If the only complaint, as it relates to their executive function, is the formal enforcement of the ordinances they enacted, qualified immunity would absolve these individuals from liability. Stated another way, the appellant must show something more than an evenhanded enforcement of the ordinance with which it disagrees.

■ Appellant also seeks declaratory and injunctive relief against the individual members seeking to require them to repeal the existing ordinances and to enact new ordinances permitting the proposed development. The immunity afforded governmental officers for damage suits does not defeat a claim for equitable relief, *Safeguard Mutual Insurance Co. v. Miller,* 472 F.2d 732 (3rd Cir. 1973), but the type of relief requested would put the court directly in a legislative role, a situation to be avoided. *New Orleans Waterworks Company v. New Orleans,* 164 U.S. 471, 482, 17 S.Ct. 161, 41 L.Ed. 518 (1896); *Real Estate Development Company v. City of Florence,* 327 F.Supp. 513 (E.D.Ky.1971). Moreover, as previously noted, the agency remains a defendant. This provides appellant an opportunity to obtain complete relief by seeking an adjudication that the land use ordinance is invalid so that appellant may proceed with its development.

### V.

### SEPARATE ISSUES

(a) *Jacobson v. TRPA,* No. 75–2400.

EUGENE A. WRIGHT, Circuit Judge:

Several remaining issues are pertinent only to one or two of the cases on appeal. The first is whether appellant Jacobson lacks standing to sue.

■ *Data Processing v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), set forth two requirements for standing: (1)

---

28. Frankfurter and Landis, *The Compact Clause of the Constitution—A Study in Interstate Adjustments,* 34 Yale L.J. 685 (1925).

the action challenged must have caused the plaintiff injury in fact; and (2) the interest sought to be protected must arguably be within the zone of interests protected. Additionally, as this court recognized in *Bowker v. Morton,* 541 F.2d 1347, 1349 (9th Cir. 1976), the recent Supreme Court cases of *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976), and *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), indicate that a plaintiff must allege facts from which it can reasonably be inferred that this injury resulted in a "concretely demonstrable way" from defendant's action *and* that a grant by the court of the relief sought will remedy the wrong plaintiff suffers.

Whether Jacobson meets these tests depends on what interest has Jacobson on which he bases his suit and on our determination of what remedies are available to him.

 Jacobson was the sole stockholder of the general partner in the limited partnership of Kings Castle Limited Partnership (KCLP). He was a limited partner in KCLP as well. KCLP owned property in the Lake Tahoe area when the LUO was enacted. Subsequent to the enactment of the ordinance, KCLP went bankrupt. During the bankruptcy proceedings it assigned its property interest to another entity. Jacobson, however, alleges that he "retained"[29] his present cause of action against the TRPA. He therefore brought suit for an improper taking of his interest in the land.

In his first complaint he requested declaratory and monetary relief. The district judge dismissed his cause of action for failure to state a claim upon which relief could be granted. The court held that monetary relief was unobtainable because the TRPA lacked the power to condemn. The possibility of declaratory or injunctive relief was left open, however.

Jacobson then amended his complaint to request declaratory and injunctive relief. This action was also dismissed, the district judge properly determining that Jacobson had no standing to request injunctive or declaratory relief because only a present owner of land has standing to attempt to set aside the zoning of his land. The judge indicated, however, that if the monetary relief issue were decided differently on appeal, the outcome as to the issue of Jacobson's standing would be different.

Assuming, without deciding, that Jacobson did "retain" a sufficient interest to allow him to proceed with his suit, the issue is whether monetary damages are recoverable. We agree with the district judge that the TRPA lacks the power to condemn, without which there can be no compensation for an inverse condemnation under the Fifth Amendment just compensation clause.[30]

Although not entitled to any share of a condemnation award, the question remains whether Jacobson might be entitled to some reduced amount for lost profits or other compensable harm. Although not raised in the district court, the theory behind such a claim would be predicated on *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). As previously noted in this opinion, we believe that that

**29.** We give Jacobson the benefit of the doubt as to what he meant by alleging that he "retained" his present cause of action. This is a matter for clarification upon remand to the district court.

It is well settled that the right to recover compensation from condemnation of property remains in the one who owned the property at the time of taking, regardless of whether the property is subsequently transferred to another. 2 Nichols' *The Law on Eminent Domain* § 5.1[4] (1976).

Using this as an analogy, the question would be whether Jacobson received whatever right to compensation KCLP originally had at the time of the alleged taking. If KCLP had a right which, similar to the right to a condemnation award, was assignable (*See Nichols, supra* § 5.21[3]) it is conceivable that it was assigned to Jacobson. Because the record before us is insufficient to make this determination, we leave this to the district court to which Jacobson may present additional documentation upon remand.

**30.** *See* n. 12 *supra.*

rationale of *Bivens* can be extended to cover a Fifth Amendment due process claim such as Jacobson's. This is true even though the action is stated against the TRPA rather than its governing members.

The case for implying a damages remedy is even more compelling in Jacobson's case because there is no meaningful alternative remedy. He has no standing to seek injunctive relief.

Therefore we vacate the district judge's dismissal of Jacobson's complaint and remand for a determination whether, in fact, Jacobson has retained a cause of action upon which his suit can be based and for further proceedings in light of this opinion.

(b) *Jones, et al. v. TRPA*, No. 76–1182.

■■■ Appellee argues that dismissal of Jones' case is appropriate for failure to establish federal jurisdiction. Such jurisdiction is appropriate only where a substantial federal question appears from a properly pleaded claim. 2 *Moore's Federal Practice* ¶ 2.07[2]. In paragraph one of their complaint, appellants state that jurisdiction is invoked on the same grounds as that invoked by the TRPA in its removal of "a comparable action to the United States District Court for the District of Nevada, Reno . . . ." [Clerk's Transcript at 1.] We disapprove of this formulation. The court, from a reading of the complaint, is unable to determine from the pleading the basis for jurisdiction.

■■■ It is also necessary for a case to be within the purview of 28 U.S.C. § 1331(a) that a right or immunity created by the Constitution or federal laws be an essential element of plaintiffs' claim. As stated by the Supreme Court in *Gully v. First National Bank in Meridian*, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936):

[A] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. The

right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another.

(Citations omitted.)

Appellants' complaint said that the nature of their claims is such that they are under the laws and Constitution of the United States and specifically the Tahoe Regional Planning Compact. They alleged no violations of specific federal Constitutional provisions.

This is not a case where the construction of the Compact provides the needed federal question. *Compare League to Save Lake Tahoe v. TRPA*, 507 F.2d 517 (9th Cir. 1974), *cert. denied*, 420 U.S. 974, 95 S.Ct. 1398, 43 L.Ed.2d 654 (1975). The question raised was whether the regulation went too far, *not* whether the TRPA, under the terms of the Compact, had the *power* to regulate.

■■■ When the constitutional underpinnings of a claim are not presented in the complaint, the general allegation of jurisdiction is not borne out by a well-pleaded claim. 2A *Moore's Federal Practice* ¶ 8.09[1].[31]

■■■ We do not hold that appellants should be denied leave to amend. Fed.R. Civ.Pro. 15 provides for leave to amend once as a matter of right when no responsive pleading has been filed, and otherwise by leave of court when justice so requires. The spirit of the federal rules is that cases should be decided on their merits. Appellants have not acted in bad faith in presenting an inadequate complaint. Therefore, although we do hold that appellants' complaint should be dismissed, the district court should do so with leave to amend.

(c) *Layton-Tahoe Properties v. TRPA, No. 76–1608 and Lake Country Estates, Inc. v. TRPA, No. 76–1289.*

GOODWIN, Circuit Judge:

In *Layton-Tahoe* and *Lake Country Estates* plaintiffs sought injunctive relief in

---

**31.** The mere fact that a party derives its power under a compact approved by Congress does not provide federal jurisdiction. *Delaware River Joint Toll Bridge Commission v. Stults*, 146 F.Supp. 241 (D.N.J.1956).

addition to damages, declarative relief, and mandamus. These requests for injunctive relief require additional consideration by this court.[32]

The district court was of the opinion that plaintiffs had stated a claim for inverse condemnation, but dismissed their actions on the sole ground that an action for damages would not lie against a defendant agency that did not have the power of eminent domain.

The court also stated in dicta that, if plaintiffs could establish that TRPA's ordinance constituted a taking of their properties, the ordinance would be treated as action beyond TRPA's authority and held invalid.

Whether plaintiffs' property has been diminished in value to such an extent as to constitute a taking is a question of fact to be decided by the trial court and cannot be disposed of on a motion to dismiss on the sole ground that an action for damages does not lie against the defendant.

■ Even if an agency which has no power to condemn property, and no budget with which to pay for property it may attempt to take, cannot be levied upon in execution of a money judgment for damages, the landowner is not helpless. Although the agency relies upon its empty exchequer to assert that it cannot be held for damages, the agency may yet be subject to an injunction to keep it from doing indirectly that which it cannot do directly. *See Rancho Palos Verdes Corp. v. City of Laguna Beach,* 547 F.2d 1092 (9th Cir. 1976). It will be for the district court to decide, upon all the facts to be developed at trial, whether or not the agency action constitutes a de facto taking without due process.

An additional problem is created by the unique manner in which Layton-Tahoe's property was rezoned by the TRPA. Appellant's 85 acres of land had been zoned for 240 home sites prior to the adoption of the LUO. The ordinance resulted in 20 of the 85 acres being designated as "Low Density Residential," allowing for a total of 80 home sites. The other 65 acres were rezoned as "General Forest." Thus a unitary piece of property was rezoned in two distinct segments.

■ Layton-Tahoe claims a $500,000 loss in value as a direct result of the General Forest designation. TRPA answers that it has the power to downzone plaintiff's property from 240 residential lots to 80. Plaintiff concedes that mere downzoning of property is not compensable. *HFH, Ltd. v. Superior Court,* 15 Cal.3d 508, 125 Cal.Rptr. 365, 542 P.2d 237 (1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). Loss in value alone is insufficient to establish an unconstitutional taking of private property. *Steel Hill Development v. Town of Sanbornton,* 469 F.2d 956, 963 (1st Cir. 1972). When a governmental regulation causes a loss in value of sufficient magnitude, however, the courts recognize the destruction of value as a taking and require compensation.

> * * * We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant -achieving the desire by a shorter cut than the constitutional way of paying for the change * * *.

*Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 416, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922).

Whether Layton-Tahoe's property should be treated as a single unit as TRPA contends, or as two separate rezoned segments, is an issue most appropriately passed on initially by the district court. The point at which a taking occurs is a question properly turning upon the particular circumstances of each case. *United States v. Central Eureka Mining Co.,* 357 U.S. 155, 78 S.Ct. 1097, 2 L.Ed.2d 1228 (1958). Upon remand, the district court will have the opportunity to develop facts sufficient to make an appropriate determination.

**32.** Jacobson, appellant in No. 75–2400, also requested injunctive relief in his amended complaint but because he has no standing to request such relief (see discussion in Part V a *supra*) we do not discuss his case here.

**948**

## VI.

### CONCLUSION

EUGENE A. WRIGHT, Circuit Judge:

The dismissal of cause No. 75–2400 is vacated and remanded for consideration of whether Jacobson retained any cause of action upon which suit can be based. If a cause of action has been retained, any further proceedings will depend on the submission of a proper amended complaint which does not request injunctive relief and does not join as parties defendant those parties found to have been properly dismissed. *See* Part IV. *supra*.

The dismissal of cause No. 76–1182 was proper although for reasons different from those given by the district court. We have held that the complaint failed to establish the basis for federal jurisdiction. We will, however, vacate the dismissal, which made no provision for leave to amend, and remand the cause for entry of an order of dismissal for failure to establish federal jurisdiction with leave to amend. Any future complaint should, of course, conform to the directives expressed in this opinion.

The dismissals of causes Nos. 76–1608 & 76–1289 are affirmed in part and reversed in part. The court's dismissal of all claims based on the just compensation provisions of the California and Nevada state constitutions and the federal Constitution are affirmed. Similarly the dismissal of the counties, states, and United States as parties-defendant was proper.

Appellants did state a cause of action for an improper taking of their property under the Fifth Amendment due process clause, however. We therefore reverse the court's dismissal of appellants' complaints for failure to state any claim upon which relief can be granted and the cases are remanded for further consideration of appellants' claims for relief, consistent with this opinion.

These four cases are vacated in part, affirmed in part, reversed in part, and remanded for further consideration.