**Ann M. McKENZIE, Plaintiff,**

v.

**Howard H. CALLOWAY et al., Defendants.**

**Civ. A. No. 4–71776.**

United States District Court, E. D. Michigan, S. D.

April 27, 1978.

On Motions for Summary Judgment
June 19, 1978.

, Fred W. Gerow, Southfield, Mich., for plaintiff.

L. Michael Wicks, Asst. U. S. Atty., Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER REGARDING THE COURT'S SCOPE OF REVIEW

PHILIP PRATT, District Judge.

Plaintiff was employed as a Secretary-Steno, Grade GS–6, at the U.S. Army Tank Automotive Command in Warren, Michigan in 1972. Because of personnel reductions plaintiff was reassigned as a GS–6 Secretary to the Research Development and Engineering Directorate of the Combat Vehicle Systems Development Office in June, 1972. The functions of the Directorate were effectively transferred to the XM 815 Tank System in July, 1972. When the new project manager, General Robert J. Baer, assumed his duties provisionally in late July, plaintiff began to serve as his Secretary.

As part of his start-up procedures, General Baer requested two secretaries. Pursuant to applicable regulations, the Army approved this request. Although General Baer had requested GS–7 and GS–8 secretaries, one was approved at the GS–6 level and the other at the level of GS–7. Plaintiff was the only individual serving as a Secretary to General Baer from late July, 1972 until June, 1973 when Mrs. Mildred

Cameron, a black woman, was appointed to fill the GS–7 position. Plaintiff was aggrieved by this appointment since she had assumed for many months that she was entitled to occupy the GS–7 secretarial position in the office. Upon learning of this new assignment plaintiff filed an administrative complaint. She also began proceedings before the Army's Equal Employment section alleging racial and sexual discrimination. After all her administrative appeals were denied, plaintiff brought suit in this Court alleging that the Army's failure to promote her to the GS–7 position in General Baer's office was improper under both traditional precepts of administrative law and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*[1]

Plaintiff's complaint is cast in three counts. Count I alleges that the defendants' failure to promote her to the GS–7 position amounted to an unlawful deprivation of property without due process of law. Specifically the plaintiff claims that the Army's decision was not supported by substantial evidence, was arbitrary and that the administrative hearings were defective because of a lack of an impartial decisionmaker and a fair and competent investigation. In Count II plaintiff claims that the Army is estopped from denying her the promotion which she seeks because of its failure to follow its own regulations. Count III of the complaint alleges that plaintiff was the victim of unlawful "reverse discrimination". The complaint seeks injunctive and declaratory relief, damages and attorneys' fees.

The defendants have filed an extensive motion to dismiss or, in the alternative, for summary judgment. Plaintiff has responded by opposing the government's motion and moving on her own behalf for summary judgment. In reviewing the pleadings it

became obvious to the Court that before it could address the merits of either party's position it must first determine both its jurisdiction and the proper scope of review to apply to Counts I and II.[2] To assist in that regard the Court has asked the parties to submit supplemental briefs limited to those questions.

The government has conceded the propriety of the Court's jurisdiction. There remains for decision, however, the scope of review issue. The government maintains that the Court is limited to reviewing the administrative record to determine whether there has been a procedural error or some arbitrary determination. The plaintiff contends that the Court is required to treat the matter de novo and find the facts afresh. Once this issue is resolved, the litigation may move forward in a more orderly fashion. The question is of critical importance because, as an examination of the pleadings show, the parties have substantial differences of opinion as to what the relevant facts are. Since the parties have waived oral argument the matter is ripe for determination based on the original and supplemental briefs that have been filed.

■ A careful reading of Counts I and II of the complaint shows that they seek a review of the propriety of certain administrative actions. Plaintiff did not receive a promotion which she believes the defendants were obligated to confer upon her under the relevant regulations. She asks the Court to set aside this erroneous action and order corrective measures. In the overwhelming majority of administrative law cases, a court is limited in its review of agency determinations to an examination of the administrative record. Where the governing law was correctly interpreted, the proper procedures were complied with, and the agency decision was supported by sub-

---

1. The foregoing is an extremely restricted statement of the facts in this case. In view of the limited nature of this opinion, the Court deems it prudent to be as circumspect as possible. Accordingly, all the facts previously recited are accepted by counsel for both parties. The Court intimates no view on any aspect of the various motions before it other than the

limited issue of its scope of review under Counts I and II of the complaint.

2. No such dispute exists as to Count III. For the sake of convenience and ease of understanding, the merits of the parties' motions with respect to Count III are more properly considered at a subsequent hearing.

stantial evidence and was not arbitrary or capricious, a court will not set aside administrative action even where it may have decided the factual issues differently. E. g., *Polcover v. Secretary of the Treasury*, 155 U.S.App.D.C. 338, 477 F.2d 1223 (1973), *cert. denied* 414 U.S. 1001, 94 S.Ct. 356, 38 L.Ed.2d 237 (1973); *Halsey v. Nitze*, 390 F.2d 142 (3rd Cir. 1968), *cert. denied* 392 U.S. 939, 88 S.Ct. 2316, 20 L.Ed.2d 1399 (1968); *Fass v. Ruegg*, 379 F.2d 216 (6th Cir. 1967). *Jammer v. U. S.*, 438 F.Supp. 1087 (E.D.Mo.1977).[3] The foregoing cases make clear that in the course of such review a district court may *not* undertake a de novo review of the administrative decision. The Court is strictly limited to a review of the administrative record.

The most recent explication of these principles is found in *Doe v. Hampton*, 184 U.S.App.D.C. 273, 566 F.2d 265 (1977), a case relied upon by the plaintiff. There a clerk-typist was dismissed from her civil service job because of alleged mental instability. The plaintiff there challenged the validity of the dismissal and the District of Columbia Court of Appeals ordered a remand of the case for further administrative factfinding. In the course of its opinion the court spoke directly to the issue presented here:

"... it is reasonably well-settled that, whatever its exact scope, judicial review in the federal courts is necessarily limited. Federal judges do not sit as ombudsmen for government employment relations, nor do we indulge the conceit of substituting our own judgment *ad libitum* for that of the agency. Rather, we concern ourselves in the personnel business only insofar as necessary to assure that the action challenged (1) is not arbitrary or capricious; (2) was reached in conformity with relevant procedural requirements; and (3) was not otherwise unconstitutional.

"Our review, as that of the district court before us, is limited to scrutinizing the administrative record accreted as the adverse action proceeds along its tortuous course up through the various levels of appeal. No de novo hearing is held." *Id.* at 279, 566 F.2d at 271–2.

The plaintiff argues that this limited standard of review is inappropriate in view of the Administrative Procedures Act. In pertinent part the Act provides that:

"To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully held or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) contrary to constitutional rights, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority or limitation, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court."

5 U.S.C. § 706.

Plaintiff argues that the provisions of 5 U.S.C. § 706(2)(E) and (F) compel the Court to hear this matter de novo.

■ This argument is unavailing. In the first instance, it is clear that § 706(2)(E) does not call for de novo review. Rather it calls for a traditional, limited review of the

---

**3.** While these cases all concern allegations of improper discharge, it is plain that the same standard applies where, as here, the plaintiff alleges that she was improperly denied a promotion. See e. g., *McCourt v. Hampton*, 514 F.2d 1365 (4th Cir. 1975).

administrative record. The plain language of subsection 2(E) refers to cases "reviewed on the record of an agency hearing." Secondly, § 706(2)(F) is not itself authority for taking testimony de novo. Subsection 2(F) instructs the Court that it must set aside agency action unwarranted by the facts only "to the extent the facts are subject to trial de novo . . . ." Clearly enough this language presupposes that there be some independent statutory authority authorizing a de novo hearing before subsection 2(F) can be brought to bear. This conclusion is buttressed by the fact that subsections (E) and (F) are narrower in scope than subsections (A)–(D). *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 413–414, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). *Citizens to Preserve Overton Park* is not, as plaintiff contends, precedent for holding de novo hearings in cases of the type at bar. *Citizens to Preserve Overton Park* involved a quasi-legislative determination by the Secretary of Transportation that was alleged to have been made in violation of statutory requirements for parkland preservation in federal highway construction. The Supreme Court remanded the case to the district court so that it could consider the full administrative record that was before the Secretary of Transportation at the time he made his decision. *Id.* at 420, 91 S.Ct. 814. The case at bar presents no analogue to the facts or holding of *Citizens to Preserve Overton Park.*

■ Plaintiff also contends that she has an independent cause of action arising under the Fifth Amendment which entitles her to a trial de novo on the claims set forth in Counts I and II. This argument rests on *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In that case the Supreme Court held that a victim of a warrantless search conducted by federal agents under color of office had an action for damages because of the violation of their Fourth Amendment right to be free

from unreasonable search and seizure. The Court rejected the government's claim that victims of illegal searches were relegated to any state law remedies that might exist. Reasoning from *Bivens,* plaintiff argues here that she had a property interest in the promotion she seeks; she was denied that promotion because of the administrative agency's unlawful activity; and that, therefore, she is entitled to a remedy for the denial of her due process rights.

It is true, as plaintiff argues, that the *Bivens* implication of a constitutional tort has been extended to both First Amendment torts, *Yiamouyiannis v. Chemical Abstracts Services,* 521 F.2d 1392 (6th Cir. 1975), and Fifth Amendment torts. *Jacobson v. Tahoe Regional Planning Agency,* 558 F.2d 928 (9th Cir. 1977); *States Marine Lines Inc. v. Shultz,* 498 F.2d 1146 (4th Cir. 1974); *U. S. ex rel. Moore v. Koelzer,* 457 F.2d 892 (3rd Cir. 1972); *Hill v. McMartin,* 432 F.Supp. 99 (E.D.Mich.1977). However, neither the *Bivens* reasoning nor these lower court opinions compel the result plaintiff desires. Each of the previously cited cases is distinguishable from the salient facts of the case at bar. None of these cases, or any other cited to the Court, involve a federal agency held accountable for the deprivation of a constitutional right under the Fifth Amendment. *Jacobson,* for example, concerned the effect of action taken by a regional planning agency created by an interstate compact. *Hill v. McMartin* was a lawsuit against the United States and several police and I.R.S. officers to recover funds seized during a warrantless automobile search.[4] *States Marine Lines* was a suit for consequential damages following improper seizure of imported goods. *Moore* was a suit against F.B.I. agents and an Assistant U.S. Attorney for conspiracy to violate civil rights.

More significant however is the fact that the Court finds clear Congressional intent not to imply an independent cause of action against an administrative agency for depri-

---

4. The opinion in *Hill* goes off as much on the general equitable power of the court as on a *Bivens*-type Fifth Amendment tort theory.

vation of constitutional right. In *Bivens* the Supreme Court observed that:

"The present case involves no special factors counselling hesitation in the absence of affirmative action by Congress."

403 U.S. at 396, 91 S.Ct. at 2004.

This same theme was sounded in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). There the Court considered whether to imply a private cause of action from a federal statute. The Court concluded that one important factor to consider is whether it is consistent with Congress' intent to imply a private remedy in the absence of specific Congressional language authorizing one.[5] See *Bivens, supra*, 403 U.S. at 402, 91 S.Ct. 1999 (Harlan, J., concurring). While there are significant differences between Constitutional and statutory rights, the Court concludes that when it engages in the peculiarly judicial task of deciding whether Congress meant by implication to add to the federal courts' limited jurisdiction, it must be mindful of the range of Congressional enactments.[6]

Examining the facts of this case the Court is satisfied, to paraphrase Mr. Justice Harlan, that no independent constitutional tort is necessary to effectuate the plaintiff's constitutional rights. More importantly the Administrative Procedure Act, 5 U.S.C. § 706, specifically sets forth the remedy Congress has provided for persons in plaintiff's position. Congress has directed that the Court's inquiry into agency respect for employee's due process rights be based upon the administrative record. In accordance with well established procedures, this Court may not deprive the administrative agency of the deference which Congress has conferred upon it.

■ The Court finds that as to Counts I and II of the complaint, its review is limited to an examination of the administrative record to determine whether

(1) the agency followed its own procedures;

(2) the laws were interpreted correctly;

(3) the decision was not unconstitutional;

(4) the action was supported by substantial evidence and was not arbitrary and capricious.[7]

Having decided the issue of the standard to apply to the motion for summary judgment, the Court will require the parties to appear on May 15, 1978 at 9:30 a. m. for oral argument on the pending motions. All issues raised in either party's motion, whether directed at Counts I, II or III will be heard at that time.

IT IS SO ORDERED.

## ON MOTIONS FOR SUMMARY JUDGMENT

The arguments of those social critics who criticize the federal bureaucracy for being engulfed in red tape and a maze of regulations would be considerably bolstered by a close examination of the case at bar. The

---

5. In *Cort v. Ash* the Court at page 78, 95 S.Ct. 2080 listed four general areas of inquiry: (1) is the plaintiff one of the class for whose special benefit the statute was enacted; (2) is there any indication of legislative intent; (3) is it consistent with the purpose of the legislation to imply a private remedy, and (4) is the problem one traditionally left to state law. No single aspect of this formula is determinative. Courts are to engage in a balancing process with respect to each of these factors.

6. Technically the question is whether Congress intended by enacting 28 U.S.C. § 1331(a) to create an implied direct action against federal administrative agencies and personnel for deprivations of due process. Section 1331(a) provides:

"The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000 exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States, except that no such sum or value shall be required in any action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity."

7. In *Doe v. Hampton, supra* at fn. 15, the court spoke to the distinction between the "arbitrary and capricious" standard and the "substantial evidence" test. Without repeating fully that scholarly discussion, the Court notes that the distinction may be more real in theory than in practice. In either case the Court contemplates more than a perfunctory review of the record.

administrative record in this matter discloses that in the spring of 1972 plaintiff was employed as a secretary, in the GS–6 classification, to the Chief of Plans and Operations Division of a tank development program at the United States Army Tank Automotive Command in Warren, Michigan. This particular unit was disestablished and plaintiff was reassigned to another GS–6 secretarial position in the Combat Vehicle Systems Development Office as part of a reduction in force on June 29, 1972.

On July 18, 1972, the Combat Vehicle Systems Development Office finished its work and was disbanded. Most employees displaced by this termination were reassigned within the Tank Automotive Command. The functions of the Combat Vehicle Systems Development Office were effectively assumed by the new XM–815 tank project. General Robert Baer was appointed as provisional manager for the XM–815 tank project in late July and his appointment became permanent on September 1, 1972. As a regular part of General Baer's initial duties he submitted a plan for the organization and staffing of the project called a Table of Distribution and Allowances (TDA). The General's proposed TDA called for himself, as director, his deputy, Colonel William Grant, and executive officer Major Jerry Garrett and two secretaries. General Baer requested that one secretary be assigned a GS–8 rating and the other secretary be assigned a GS–7 rating. The Army approved General Baer's proposed TDA as submitted with the exception of the secretarial positions which were each reduced one grade. When finally approved the GS–7 job was assigned number 11875 and the GS–6 position number 11878.

During the period from July 18, 1972 to December 10, 1972, plaintiff was the sole secretary working at the unit. It appears, as well, that during this time plaintiff was still working under her appointment to the Combat Vehicle Systems Development Office. On December 10, 1972, plaintiff received a Civil Service Commission Form SF–50 notification of personnel action, officially placing plaintiff in job number 11878, grade GS–6. The SF–50 form contained the notation "AMCPM–GCM" in the section headed "remarks." In response to this appointment General Baer sought to have plaintiff promoted into the GS–7 position. In April, 1973, after it was clear that the Army either would or could not promote plaintiff without fully competitive procedures, General Baer simultaneously requested that a competitive recruitment action be undertaken to fill the vacant GS–7 position and that plaintiff be given a temporary, non-competitive promotion to fill that position until a permanent selection could be made.

Neither of General Baer's requests were acted upon, however, because Mildred Cameron, a Black secretary with a GS–7 rating, who was just terminated as a secretary in the Office of the Commanding General, Tank Automotive Command, as a result of reduction in force, was assigned to the vacant position in General Baer's office. Ms. Cameron's appointment became official on June 30, 1973. Upon learning that another individual was going to be assigned to the job she considered to be hers, plaintiff embarked upon what has proven to be a lengthy series of appeals to secure official appointment to job number 11875, GS–7, secretary to General Baer.

On May 7 and 9, 1973, plaintiff's representative met with the unit's Civilian Personnel Officer, George Blakeslee, in an effort to resolve her complaint. These discussions failed to produce a result satisfactory to the plaintiff and on May 14, 1973, she filed a formal grievance with the Department of the Army. After the grievance was filed, General Baer and the Civilian Personnel Officer met with plaintiff's representative to offer her a temporary 60-day promotion to settle the grievance. The plaintiff's representative rejected this offer.

Plaintiff then requested that a grievance examiner be assigned to the case. Jo Ann Graham was assigned to come to the Tank Automotive Command in Warren to investigate the grievance. Plaintiff also asked for an evidentiary hearing at which she could present 19 witnesses. This request was de-

nied by the grievance examiner who chose instead to rely upon documentary material. The grievance examiner considered plaintiff's procedural and substantive claims. On August 29, 1973, the examiner issued her 13 page report recommending that the grievance be denied and that plaintiff be given credit in her personnel folder for the experience gained while she was the single secretary in the XM–815 project office. Slightly less than one month later, General Baer accepted the report and denied the grievance.

After filing her grievance with the Department of the Army, but prior to the issuance of the grievance examiner's report, plaintiff filed an appeal with the Chicago Regional Office of the U. S. Civil Service Commission, challenging the propriety of the reduction-in-force action which led to the placement of Ms. Cameron in General Baer's office. Briefly, plaintiff alleged that the reduction-in-force was (1) a reduction in her rank without adequate notice, (2) was improper, and (3) was taken without due regard to her equitable right to hold the position she had fulfilled for so many months. The Regional Office denied plaintiff's appeal. Plaintiff then sought relief from the Civil Service Commission's Appeals Review Board which held that since plaintiff had never been officially appointed to the GS–7 position, the Board was without jurisdiction to determine her claim that she had been improperly deprived of it.

On October 16, 1973, plaintiff filed a complaint with the Army's Equal Opportunity Counselor alleging that the appointment of Ms. Cameron to the GS–7 position in the XM–815 project office (by that time known as the XM–1 project) subjected plaintiff to race and sex discrimination. Some of the details of the events resulting from this EEO complaint are in dispute. However, it is agreed that the counselor engaged in a preliminary investigation (the character of which was unsatisfactory to plaintiff), advised plaintiff that he thought her chances of prevailing were poor and asked plaintiff whether she desired to proceed. Plaintiff requested that informal proceedings continue. When these informal measures proved fruitless, plaintiff filed a formal complaint of discrimination with the Army on January 15, 1974. On January 24, 1974, the Army asked for clarification of plaintiff's complaint. On February 4, 1974, the Equal Employment Opportunity Officer at the Tank Automotive Command requested the Army Civilian Appellate Review Office to assign a hearing examiner to the case. On April 23, 1974, James Bage, Acting Director of the Equal Employment Opportunity, Department of the Army, directed that plaintiff's Equal Employment Opportunity complaint be dismissed without further investigation. Plaintiff was notified of this determination on May 7, 1974. This lawsuit followed in timely fashion.

Plaintiff's complaint is cast in three counts. Count I alleges that the Army's denial of her request for the promotion to the GS–7 position deprived her of due process of law both as to the fact of the denial and the manner in which her administrative appeal was processed. In great detail the plaintiff describes the ways in which she believes the defendants' decision was neither supported by substantial evidence nor reached in an appropriate fashion. Count II contends that the Army must be estopped from denying her the promotion she desires because of its failure to follow various administrative regulations. Count III alleges that the plaintiff was the victim of unlawful sex and race discrimination. Plaintiff requests an injunction directing her immediate promotion to GS–7, the position she believes is rightfully hers, back pay and attorneys' fees.

The defendants have filed a comprehensive motion to dismiss Count III of the complaint. Defendants have also sought dismissal of the first two counts, or in the alternative, summary judgment. Plaintiff has responded by opposing the motions and moving on her own behalf for summary judgment. With respect to the first two counts of the complaint the Court ruled on April 27, 1978 that it was limited to reviewing the administrative record to determine whether,

(1) the Army followed its own procedures;

(2) in reaching its decision all issues of law were decided correctly;

(3) the Army's decision was constitutionally infirm;

(4) the agency's action was supported by substantial evidence and was not arbitrary and capricious.[1]

The Court's consideration of Count III, of course, is not so limited because it is brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16.

## I. REVIEW OF THE AGENCY ACTION

### A. *Adherence to Agency Regulations*

■ Plaintiff's first set of challenges to the Army's processing of her grievance is directed at the activities of the Civilian Personnel Officer (CPO), George Blakeslee.[2] Specifically plaintiff contends that the CPO acted improperly by attempting to settle her grievance with her directly instead of through her designated representative and by making various decisions for General Baer. The Court finds nothing in the record to suggest any impropriety which would impugn the fairness of the Army's proceedings. Plaintiff has not demonstrated that there is a duty on those federal employees trying to conciliate a grievance not to speak directly with one who has a representative. The pertinent Civil Service regulations, FPM Chapter 771.1–5 provides that:

"An employee has the right . . . to be accompanied, represented, and advised by a representative of his choice at any stage of the proceedings."

The analogous Army regulation, CPR 771.-C–5(b)(1) contains similar language which makes no mention of duties imposed on federal employees with respect to represented grievants. The regulations do not forbid contact between a representative of the agency and the grievant. There is no reason to suppose that either the Civil Service Commission or the Army intended to

burden what is clearly intended to be an expeditious, uncomplicated dispute resolution system with the accoutrements of the lawyers' Code of Professional Responsibility. See CPR 700 (Ch. 11) 771.C–1(b). Moreover, the Court notes that plaintiff suffered no prejudice as a result of the challenged conduct. She had a right not to speak with any of the defendants' agents without the presence of her representative. So far as the record indicates she exercised that right without reprisal. To suggest that any and every effort by a civilian personnel officer to resolve a dispute at the early stages invalidates subsequent agency proceedings is hardly an acceptable proposition. Absent some showing that the conduct led to action by the plaintiff which materially affected the outcome of the agency's administrative proceedings, the Court must conclude that this allegation lacks merit.

■ Plaintiff also challenges the validity of the agency's proceedings on the ground that the Civilian Personnel Officer in fact made the decisions attributed to General Baer. Plaintiff's argument is entirely circumstantial. She reasons that because the CPO's settlement suggestions of early May were incorporated in General Baer's offer of settlement by temporary promotion made on June 6, 1973 (Ex. 3, Incl. 2), the General simply abdicated his responsibility. This claim, as well as other vague assertions alleging impropriety growing out of the professional relationship between the CPO and General Baer, is without merit. There has been no showing in the record or otherwise of any improper conduct. The relevant papers are signed by the General. The Court finds that absent some evidentiary showing to the contrary, an officer of the Army who signs recommendations or offers of settlement is taken to have made the relevant decisions independently. See *Citizens to Preserve Overton Park v. Volpe,* 401

---

1. See Docket Entry No. 26.

2. The parties agree that an Army commanding officer may have at his disposal the services of a Civilian Personnel Officer to help understand and interpret the Civil Service regulations. In this way the commander will not be unduly burdened with the technical aspects of the regulations, the administration of which might otherwise detract from the unit's primary mission. See CPR 200, Ch. 250, 254.2(e)(1).

U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). The mere fact that a particular decision happens to coincide with a recommendation made by his Civilian Personnel Office is neither suspect nor cause to upset administrative proceedings.[3]  This is so even though the CPO may be designated in some instances to "act for" an Army officer in personnel matters.  In this case the record is clear that General Baer considered and decided the matters himself.

█ Plaintiff also argues that under the applicable regulations her grievance should have been heard initially by the Commander of the U. S. Army Material Command in Washington instead of General Baer. Plaintiff's argument rests upon CPR 200 (Ch. 18) 254.2–5(g)(1), from which she extracts language repeated in CPR 700 (Ch. 11) 771.C–7(c)[4] that

"Grievances and appeals on adverse action from employees in an activity receiving civilian personnel management services from an activity reporting to another major commander will be forwarded to the major commander having jurisdiction over the serviced activity."

Using this language as her starting point, plaintiff notes that General Baer's Civilian Personnel Officer was providing service by a written contract,[5] and concludes that the grievance should have gone to the major commander of the serviced activity for resolution.

The Civil Service regulations require all federal departments to adopt formal and informal procedures to resolve employment problems.  5 CFR § 771.112.  These procedures are to be structured so that at each level there is no duplication of decision-makers.  5 CFR § 771.116(a).  The Department of the Army adopted a three-step procedure in CPR 700 (Ch. 11) 771.C–8. The first two steps of the Army's grievance procedure provide for informal meetings

between the grievant and her supervisor or next-higher supervisor, always preserving the commanding officer as separate from this process so that he may serve as the deciding official in the third step, or formal, proceeding.  CPR 700 (Ch. 11) 771.C–8(d)–(f).  Where a grievance stems from a reduction-in-force action, as was the case here, the first two steps of the grievance procedure may be omitted, and the grievance may be initiated at Step 3.  CPR 700 (Ch. 11) 771.C–8(c)(5)(c).

The difficulty in the present case arises because the dispute in issue involves the identity of plaintiff's immediate supervisor. Plaintiff argues that she was entitled to the GS–7 position and thus her immediate supervisor was General Baer.  The Army claims that she was in the GS–6 position and her supervisor was Colonel Grant.  The distinction is significant because, under CPR 200 (Ch. 18) 254.2(g)(1), which governs servicing agreements such as the one which enabled Mr. Blakeslee to act as CPO to General Baer,

"The provisions of CPR 700, Chapter 771, Appendix C, will be applied to both servicing and serviced activities . . . . Grievances and appeals requiring a higher decision level will be forwarded to the major Army commander having jurisdiction over the serviced activity.  Grievances involving interpretations of regulations will be forwarded through channels to the major Army commander having jurisdiction over the servicing activity."

If General Baer is the plaintiff's immediate supervisor then of course he would be both the step 1 and step 3 deciding official and reference to a "higher level" would be necessary to preserve the independence factors built into the grievance system.  If plaintiff was properly characterized as reporting directly to Colonel Grant, then General Baer was the proper step 3 deciding official and the Army did comply substantially with the

---

**3.**  Whether a plaintiff challenging the validity of agency action must show both actual improper exercise of responsibility and prejudice is not here in issue and the Court intimates no view on the question.

**4.**  CPR stands for Civilian Personnel Regulation.

**5.**  General Baer was within the Army Material Command.  Mr. Blakeslee worked for the Tank Automotive Command.  The contract is found at Exhibit 13, Subexhibit 4.

regulations since the matter could properly be initiated at step 3. The grievance examiner found that plaintiff's immediate supervisor was in fact Colonel Grant, and for the reasons that follow the Court is persuaded that she was correct.[6] The Court notes however that here again plaintiff has failed to demonstrate that she suffered any prejudice by the activities she complained of. In his capacity as deciding official General Baer called for an investigation by an independent grievance examiner in accordance with CPR 700 (Ch. 11) 771.C–8(f)(2). This is precisely what could have been expected of the Army Material Command, to which plaintiff wanted to appeal. Moreover, the record indicates that General Baer, who ultimately accepted the findings of the grievance examiner, was positively disposed to plaintiff with whom he enjoyed a good working relationship. Thus, plaintiff's claims here, as elsewhere, seems to exalt form over substance. The regulations require a fair and impartial decision. Plaintiff got it. Under these facts and the applicable regulations she received that determination in the appropriate forum. This claim is, therefore, without merit.

■ Lastly, plaintiff complains of numerous defects in the conduct of the investigation by the hearing examiner. Essentially the plaintiff argues that the hearing examiner erred in failing to conduct a more wide-ranging investigation which included the taking of testimony.

The Civil Service Commission has adopted regulations which address themselves to the conduct of examinations of this type. In 5 CFR § 771.116(d) the Commission said that

"The examiner shall conduct an inquiry of a nature and scope appropriate to the

issues involved in the grievance. *At the examiner's discretion*, the inquiry *may* consist of:

(1) The securing of documentary evidence;

(2) Personal interviews;

(3) A group meeting;

(4) A hearing; or

(5) Any combination of subparagraphs (1) through (4) of this paragraph."

(Emphasis supplied).

The Army regulation on this subject substantially tracks this language. 700 CPR (Ch. 11) 771.C–13(a)(1).

As is plain, the regulations invest considerable discretion in the hearing examiner to determine the type of investigation that should be conducted. In this case the hearing examiner secured the relevant documentary evidence. In light of the voluminous record in this action, which includes the extensive recitations of the positions of the plaintiff on the numerous issues, the Court finds there was no abuse of discretion in denying plaintiff's request for a hearing.[7]

### B. *Sufficiency of the Evidence*

The grievance examiner considered and rejected several theories propounded by plaintiff to show that she was entitled under the regulations to a promotion to the GS–7 job. The hearing examiner concluded, and General Baer adopted as his own findings, that

(1) plaintiff had been officially assigned to position number 11878, GS–6;

(2) plaintiff served in a dual capacity for many months while she was the only secretary in the unit and was entitled to receive credit in her personnel folder for this service;

---

**6.** The issue, thus framed, is identical to the questions which plaintiff raises concerning the validity of the grievance examiner's substantive determination about her entitlement to the GS–7 promotion. Rather than repeat the substance of the Court's consideration of that aspect of this litigation at this point, the Court incorporates by reference its findings on these issues at Part I, B, *infra* pp. 601–603. While this approach does require a certain

amount of cross-referencing, the Court felt it desirable to consider the plaintiff's procedural claims first because, if they were found to be meritorious, remand to the agency for further proceedings might be appropriate and the substantive issues would not be reached.

**7.** *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) relied on by plaintiff is inapposite.

(3) no basis for retroactive, noncompetitive promotion to the GS–7 position existed by virtue of reduction-in-force action, job accretion or upgrading; and

(4) no reduction in rank occurred and therefore no adverse action proceedings were required.

Plaintiff now argues that the record does not support those determinations.

## 1. *Retroactive Noncompetitive Promotion.*

■ Since its inception the Civil Service Commission has sought to protect the integrity of public employment by requiring open, competitive procedures for the appointment of federal employees. In some circumstances, noncompetitive procedures may be used to fill Civil Service vacancies. Plaintiff contends that the grievance examiner erred in not ordering her promotion under one of those exceptions.

Two closely related exceptions to the merit promotion requirement are known as "job accretion" and "upgrading" of a position without any significant changes in duties. In the Federal Personnel Manual (FPM) 335.4–2(d) the Commission stated that:

"An agency may make a career promotion of an employee whose position is reconstituted in a higher grade because of the accretion of additional duties and responsibilities if the accretion was not the result of planned management action."

The grievance examiner found that the plaintiff did not meet the requirements of this section. The Court agrees.

The pertinent regulation goes on to say that:

"To be eligible for career promotion when [her] position is upgraded under these conditions, an employee must continue to perform the same basic function and [her] former position must be absorbed administratively in the new one. When an additional position is created, or when the new position is not a clear successor to the former position, career promotion may not be made."

Plainly enough, plaintiff cannot qualify for noncompetitive promotion under this section. While plaintiff did perform as the only secretary in the unit for several months, her position was not absorbed administratively into a new position. At all times the unit was slotted for two secretarial staff members. The existence of the unfilled GS–7 position, automatically eliminates job accretion as a realistic possibility for plaintiff's advancement.

In FPM 335.4–3(b) the Commission indicates that

"An agency must provide for an exception to competitive promotion procedures to allow for the promotion of an incumbent of a position which has been upgraded without significant change in duties and responsibilities on the basis of either the issuance of a new classification standard or the correction of a classification error."

Here again, plaintiff cannot meet the requirements of the rule. There was neither a new classification standard which upgraded the category of plaintiff's work, nor was there any indication in the record that there was a classification error in plaintiff's case. In reaching this conclusion the Court bears in mind that it

"may not grant promotions where the exercise of such power would result in substitution of the court's judgment for executive agency discretion. Our power, if any, to grant promotions and corresponding back pay hinges upon a party's legal entitlement to such a remedy based on a statute or regulation."

*Skrobot v. U. S.*, 534 F.2d 237, 208 Ct.Cl. 435 (1975) (citations omitted).

A plaintiff complaining of an agency failure to promote her bears a heavy burden to demonstrate that the administrative decision not to grant promotion is contrary to the strict terms of statute or regulation. In this instance plaintiff has not met that burden.

Plaintiff also argues that the action of the Army in terminating her Combat Vehicle Systems Development unit and reassigning her to the XM–815 project was a reduc-

tion-in-force which entitled her to noncompetitive promotion. TACOM Regulation 600–5.15–15(c).[8] In the first instance, the Court notes that the regulation which plaintiff relies upon is discretionary, not mandatory. The Court is loathe to upset the decision of the agency which has been assigned that task on the showing made here. More significantly, however, the Court believes that this regulation is inapplicable. FPM 351.2–6(a) states that

"For reduction-in-force purposes, a reorganization occurs when management at any level adds to, takes from, or redistributes the functions or duties on one or more positions. When a reorganization is the cause of change to lower grade or reassignment involving displacement, the reduction-in-force procedures must be followed".

However,

"If the reassignment is to a position in the same competitive level, it is neither a reduction-in-force action nor an adverse action because (i) reduction-in-force regulations apply only when there is a release from a competitive level, and (ii) positions within a properly constructed competitive level are so similar in duties and responsibilities that the interchange of personnel is feasible; they are, therefore, necessarily of the same rank in the organization." FPM 351.2–6(b)(1).

Thus it is clear that plaintiff's reassignment to position number 11878 in the XM–815 unit was not a reduction-in-force which would entitle her to noncompetitive promo-

tion because she remained in the same competitive level.[9] The grievance examiner's conclusions were, therefore, not in error as to this point.

2. *Constitutional Entitlement.*

█ Plaintiff's complaint is broader than the sort of technical consideration of the regulations discussed previously would imply. The gravamen of plaintiff's dissatisfaction with the administrative determination below is that for a significant period of time she served as the only secretary in an office with two designated job slots—as such she considered herself to be the "top" secretary in that unit, and she felt she had an entitlement to continue in the "top" spot. Inasmuch as the top secretary was to be rated as a GS–7, plaintiff argues that she deserves the promotion.

The chief difficulty with plaintiff's argument is that she was never officially appointed to the GS–7 position. She was rated GS–6 when she began to work for General Baer in July, 1972. She was officially appointed to a GS–6 position in December, 1972 by an official Notice of Personnel Action. As made clear in FPM Supplement 752–1–4(a) "An official personnel action is an action which requires the issuance of a Standard Form 50 or a form used instead of SF–50." This kind of official personnel notification is a *sine qua non* of the type of entitlement plaintiff claims. The Court agrees with the reasoning of *Peters v. U. S.*, 534 F.2d 232, 208 Ct.Cl. 373 (1975). In *Peters* an Associate General Counsel of the Federal Aviation Administration had a rat-

---

8. "A promotion may be made on a non-competitive basis in any of the following situations: . . . placement actions required in connection with Reduction-in-Force, i. e., reorganizations, reductions in spaces or funds, or transfer of functions." The Regulation was promulgated by the U.S. Army Tank Automotive Command.

9. This same provision of the Federal Personnel Manual applies with equal force to plaintiff's claim that she suffered a reduction in rank without any adverse hearing opportunity. See also FPM Supplement 752–1–4(b) which indicates that adverse action proceedings are only necessary when the reassignment is to a position with a lower competitive level. The Court

finds that FPM Supplement 752–1–4(b) takes precedence over 752–1–4(a) on which plaintiff relies. There the Commission indicates that though rank means something more than mere numerical GS grade, a reduction in rank cannot be determined without reference to "an employee's relative standing in the agency's organizational structure, as determined by his *official* position assignment." (Emphasis supplied). The official position assignment is one determined by SF–50 form. Thus, when subsection (a) is read in the light of subsection (b), it is clear that a reduction in rank could possibly occur as between two GS–6 secretaries, but not in an office where one secretary was rated GS–6 and another had a higher rating.

ing of GS–16. In January, 1968, he was appointed Acting Deputy General Counsel. Even though the position he was appointed to in an "Acting" capacity was rated for a GS–17, Peters continued to be paid at the GS–16 rate. Despite the lack of any official promotion plaintiff served in this acting capacity until February, 1971. In considering his suit for back pay the court said:

"First and foremost, it is patently clear that in spite of any implication to the contrary, plaintiff was never officially appointed to the position of Deputy General Counsel. Sundry proposals may have been made to promote him, but the facts are clear—no appointment was ever consummated. This court has repeatedly held that a government employee is entitled only to the rights and salary of the position to which he has been appointed." *Id.* at 234. Accord: *Goutos v. U. S.*, 552 F.2d 922, 212 Ct.Cl. 95 (1976).

The grievance examiner found as a matter of fact that plaintiff's Notice of Personnel Action effective December 10, 1978 appointed her to job number 11878, GS–6. Although plaintiff argues that the notion "AMCPM–GCM" denotes assignment as secretary to General Baer which was known by all to be the GS–7 position, the Court finds that there is ample evidence in the record to support the well-documented conclusion of the grievance examiner. The appointing document plainly sets forth both the job number and grade of plaintiff's assignment. (Exhibit 3, Items 20–22).

This factual conclusion effectively disposes of plaintiff's claim that the failure to grant her the promotion she desires deprived her of a protected property right without due process of law. In *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), relied on by both the plaintiff and defendants, the Supreme Court had occasion to consider the relation between the Due Process Clause and intangible property. In that case the plaintiff argued that a state university's failure to renew his teaching contract without notice and an opportunity for hearing violated

procedural due process. The lower courts had held in favor of Roth on this issue. In reversing those rulings the Supreme Court said:

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. . .

"Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."

*Id.* at 577, 92 S.Ct. at 2709.

By this standard it is plain that the plaintiff never had a protected property interest in the GS–7 position she seeks to be judicially promoted to. The plaintiff's unilateral expectation is insufficient, in the face of the Civil Service Commission's clearly defined rules, to create a constitutional issue of an administrative problem.[10]

The Court must also consider whether the Army's decision to deny plaintiff a promotion to the GS–7 position was arbitrary and capricious. To be sure, there are some equities in plaintiff's favor. In the context of the everyday working environment of a relatively small office it is understandable that plaintiff would prefer to remain either the sole secretary, or the secretary with the highest position on the organizational chart. But in reviewing the administrative decision, the Court may not be concerned with either how it might have handled the problem formally or informally, or the plaintiff's emotions. Rather the issue is whether the agency abused the discretion entrusted to it by Congress in the discharge of its responsibilities. Reviewing the record as a whole the Court cannot find any errors of law or procedure. Indeed, the

**10.** The Court finds, as well, no "understanding" which supports plaintiff's claim of estoppel.

administrative decision-makers seem to have threaded their way through a complicated maze of confusing and voluminous regulations with exemplary skill.

Defendants are therefore entitled to summary judgment on Counts I and II of the complaint.

## II. EMPLOYMENT DISCRIMINATION COMPLAINT

█ Treating Count III of plaintiff's complaint liberally, it appears to raise two separate claims under Title VII—that plaintiff was the victim of reverse discrimination because the assignment of Ms. Cameron to the GS–7 position was race-preferential in violation of plaintiff's rights and that the failure to promote her to the GS–7 position was impermissibly based on sex because secretaries, all of whom are women, are not given credit for on-the-job experience in the same manner as male employees. In this second prong of her complaint, plaintiff alleges that had she been given credit for the knowledge and experience she acquired while working on the XM–815 and other projects, she would have been entitled to a merit promotion to the GS–7 position she seeks. The final link in plaintiff's claim is that had she been a male the Army would have given her credit for this experience. The government has moved to dismiss this Count on the ground that plaintiff failed to file an administrative complaint in a timely fashion.

The relevant Civil Service Regulations provide that an agency of the government may not process a Title VII complaint unless

"The complainant brought to the attention of the Equal Employment Opportunity Counselor the matter causing [her] to believe that [s]he had been discriminated against within 30 calendar days of the date of the matter, or if a personnel action, within 30 calendar days of its effective date." 5 CFR § 713.214(a)(1)(i).

The pertinent dates are not in dispute. Plaintiff filed her complaint with the Army's Equal Employment Opportunity Counselor on October 16, 1973. Ms. Camer-

on was appointed to the GS–7 position effective June 30, 1973. It would thus appear that failure by the plaintiff to file her complaint prior to July 30, 1973 bars any action in this Court.

Plaintiff argues that the matter leading her to believe that she was discriminated against was General Baer's denial of her grievance on September 26, 1973. This claim is untenable. Plaintiff is arguing, in effect, that she should be excused from pursuing her Title VII remedies while she awaits the outcome of other avenues of relief. The time limits contained in the regulation are designed to afford speedy conciliation of disputes just such as this. Nowhere in the case law, the statute or the regulation does there appear any exception for individuals who determine that they want to pursue their Title VII remedies only after other available procedures have fallen through.

█ Neither Congress nor the Civil Service Commission plays as fast and loose with the time restrictions of Title VII as the plaintiff would have it. An individual who believes she was discriminated against must pursue her rights promptly. This is not a case where the fact of discrimination was hidden by some actions of the defendants. Plaintiff knew Ms. Cameron was Black. Nothing in General Baer's letter of September 26th informing her of his decision added any fact which would give rise to a newly discovered claim of discrimination. The exhaustion requirement of 5 CFR § 713.241(a)(1)(i) is binding upon plaintiff as it is on other government employees. *Ettinger v. Johnson*, 518 F.2d 648, 652 (3rd Cir. 1975); *Stockton v. Harris*, 434 F.Supp. 276 (D.D.C.1977); *Adams v. Bailar*, 426 F.Supp. 263 (E.D.Va.1976).

█ Though the relevant dates are different, the same conclusion obtains with respect to plaintiff's allegations of sex discrimination. The record reflects the fact that the basis of the sex discrimination charge were some remarks made by a Mr. Trapp to numerous women secretaries at the Tank Automotive Command. (Exhibit

15H).[11]  Plaintiff does not indicate when she first learned of these statements and thus first had cause to suspect that she was the victim of sex discrimination. Nothing in General Baer's determination of September 26, or the grievance examiner's report on which it was based, made reference to any facts remotely related to this claim. Under the previously cited cases the burden is on the plaintiff to establish that her complaint was timely filed. There are no facts in the record which rebut the inference that plaintiff knew of the facts which form the basis of her sex discrimination complaint prior to September 16, 1973.[12] Accordingly, Count III will be dismissed.

For the foregoing reasons, plaintiff's motion for summary judgment is denied, the defendants' motion for summary judgment on Counts I and II are granted and defendants' motion to dismiss Count III is likewise granted.

IT IS SO ORDERED.

---

11. Mr. Trapp was listed as a witness by plaintiff on her formal employment grievance in May, 1973.  (Exhibit 13, subexhibit 1).

12. Mrs. Herbin, a fellow employee listed as a witness on behalf of plaintiff from the very beginning of her formal grievance procedures, testified in her affidavit (Docket Entry No. 22) that in March, 1973 Mr. Trapp made statements about the Army's rationale for job reductions which were sex based. The inference is that plaintiff knew of these grounds for complaint well before September, 1973. See also Exhibit 13, inclosure 2, and subexhibit 3, paragraph 6, for indications that plaintiff had grounds to file an EEO complaint in June, 1973.