831 F.2d 293
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Elvis R. & Brenda S. BEUTLER, Plaintiffs-Appellees,
v.
John BLOCK, Individually and In His Capacity as Secretary of
the United States Department of Agriculture; Johnny V. Crow,
Individually and In His Capacity as State Director for
Tennessee Farmers Home Administration, United States
Department of Agriculture; and Glenn J. Hamlett,
Individually and In His Capacity as Chief of Farmers
Programs, Tennessee Farmers Home Administration, United
States Department of Agriculture, Defendants-Appellants.
 Nos. 86-5202, 86-5855
 United States Court of Appeals, Sixth Circuit.
 October 6, 1987.
 
 Before ENGEL, KRUPANSKY and DAVID A. NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is an action for damages allegedly sustained by the plaintiffs as a result of their having received loans from the Farmers Home Administration ('FmHA') and then having been denied additional loans. The plaintiffs sued four government officials: Secretary of Agriculture John Block, FmHA Administrator Charles Schuman, FmHA Tennessee State Director John V. Crow, and FmHA Chief of Farmer Programs for Tennessee Glenn J. Hamlett. The district court dismissed all claims against Mr. Schuman. As to the other three defendants, the court dismissed all claims except those deemed actionable as 'constitutional torts' under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971). The remaining defendants then moved for summary judgment on the Bivens claims. The district court denied the motion and certified a statute of limitations issue for interlocutory appeal.
 
 
 2
 The defendants contend on appeal not only that they have a valid statute of limitations defense, but also that they are immune from suit and that the complaint fails to state any Bivens claims. (The Court has jurisdiction to consider the immunity issue under Mitchell v. Forsyth, 472 U.S. 511 (1985).) We have concluded that if any of the remaining claims may be colorable under Bivens, they ought to be dismissed on qualified governmental immunity grounds. This conclusion makes it unnecessary for us to address the statute of limitations issue.
 
 
 3
 ***
 
 
 4
 The plaintiffs, a married couple, borrowed money from the FmHA to purchase and operate a farm and build a residence. The loans were secured by the plaintiffs' real estate and certain of their personal property. Under regulations promulgated pursuant to the Consolidated Farm and Rural Development Act, 7 U.S.C. Secs. 1921 et seq., the plaintiffs were classified for loan application purposes as 'limited resource applicants.' The regulations recognize that such applicants will need 'special help' and 'supervisory assistance' because of 'such problems as underdeveloped managerial ability, limited education, low-producing farm due to lack of development or improved production practices and other related factors.' 7 C.F.R. Sec. 1941.4(g). The plaintiffs say they did not get the help and assistance to which they were entitled, and they fault the Secretary for hiring incompetent and unqualified employees and failing to supervise them properly.
 
 
 5
 The regulations provided that the FmHA would prepare plans for the plaintiffs to meet certain asset acquisition and debt liquidation goals. 7 C.F.R. Secs. 1809.6 and 1951.25. The plaintiffs allege that these plans were drawn so that it was mathematically impossible to follow them. The plaintiffs further allege that the plans were unilaterally altered, that regulations were violated in the drafting of the plans, and that the defendants ought to have prevented the violations from occurring. The plaintiffs also say that the promisary notes they signed called for substantial overpayments.
 
 
 6
 While the plaintiffs' home was being built, disagreements arose with the builder over alleged defects in workmanship. The plaintiffs told the local office of the FmHA that it was letting them down by not suing the builder. Various inspections had been made of the residence by FmHA officials, and at least seventeen items were found not to be in complicance with minimum property standards. The defendants allegedly violated numerous regulations by failing to take action against the builder or to advise plaintiffs of their rights. The plaintiffs eventually sued the builder themselves, filing their action in a state court. The local office of the FmHA testified for the builder, and the court found in the builder's favor, for the most part.
 
 
 7
 The plaintiffs say that they did not appeal the state court's judgment because of a misunderstanding with their attorney and because they could not afford any more legal fees. Contrary to their wishes, they allege, their attorney entered into a consent order obligating them to pay the builder all but $1,000 of the contract price. They note that '[t]he trial judge added . . . words directing that FmHA pay over the funds, although FMHA was never a party to the lawsuit.'
 
 
 8
 After judgment was entered, the plaintiffs refused to use a check they received from the FmHA to pay the builder. They were ultimately jailed for failure to comply with the court order. The plaintiffs contend that the defendants conspired to have them jailed, basing this conclusion on the propositions that defendant Hamlett instructed the local office to stop payment on the check, that a note by the attorney for the builder said 'FmHA . . . [s]aid to sit TIGHT on the supervised bank account,' and that various regulations were violated by the defendants when they failed to help the plaintiffs fight the consent order.
 
 
 9
 There came a time when the FmHA declined to lend the plaintiffs any more money, and the plaintiffs allege that the agency violated its regulations in turning down their loan applications. The plaintiffs claim the agency's procedures are unfair, and they assert that contrary to the regulations they were not provided notice regarding deferrals and reamortization of their indebtedness.
 
 
 10
 Because of the growing arrearages in the loans, the FmHA accelerated the indebtedness and instituted foreclosure proceedings. The United States is said to have purchased the plaintiffs' farm lands residence at a foreclosure sale.
 
 
 11
 ***
 
 
 12
 The plaintiffs appear to be asserting that the defendants violated their due process rights by (1) depriving the plaintiffs of their liberty by suffering them to be wrongfully imprisoned; (2) depriving them of a 'property interest' in future FmHA loans without having given them a fair hearing and without having followed governmental regulations; and (3) depriving them of their farm and other loan collateral without having followed regulations.
 
 
 13
 As to the plaintiffs' imprisonment, it was not proximately caused by the defendants and thus cannot form the basis of a Bivens claim. As for the denial of FmHA loans, a mere expectancy that loans will be granted does not constitute 'property' within the meaning of the Due Process Clause. McCachren v. United States Department of Agriculture, 599 F.2d 655, 657 (5th Cir. 1979); De Journett v. Block, 799 F.2d 430 (8th Cir.); Carson v. Block, 790 F.2d 562 (7th Cir. 1986), cert. denied, ---- U.S. ----, 93 L.Ed.2d 721 (1986); cf. Lyng v. Payne, 476 U.S. 926, ---- 90 L.Ed.2d 921, 936 (1986). 'Limited resources applicants' do not occupy a more advantageous position than others in this respect.
 
 
 14
 Plaintiffs point to the following statement in a security agreement they entered into with the FmHA:
 
 
 15
 'Secured Party will make or insure future loans or advances to Debtor to enable Debtor to raise or harvest farm crops or raise livestock or other animals, provided funds are available and the Debtor meets all the current requirements imposed by regulations of the Secured Party.'
 
 
 16
 If this statement gave rise to a contractual obligation (a question that need not be answered here), a showing that the obligation was violated would depend on a showing that there was a misapplication of the agency's regulations. That is also the basis of the claim that the plaintiffs were deprived of their farm without due process of law. Yet such a misapplication of the regulations, even if it rose to the dignity of a deprivation of property without due process, would not necessarily be actionable under Bivens:
 
 
 17
 'Bivens established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such right. Such a cause of action may be defeated in a particular case, however, in two situations. The first is when defendants demonstrate 'special factors counseling hesitation in the absence of affirmative action by Congress.' [Citations omitted.] The second is when defendants show that Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective.' [Citations omitted.]' Carlson v. Greene, 446 U.S. 14, 18 (1980)
 
 
 18
 'Special factors counseling hesitation' would seem to exist here, cf. McKenzie v. Calloway, 456 F.Supp. 590 (E.D. Mich. 1978), aff'd, 625 F.2d 754 (6th Cir. 1980), and the defendants are protected from suit in any event by the doctrine of qualified governmental immunity, because it is far from clear that any of the defendants violated any of the plaintiffs' constitutional rights. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982), teaches that neither the costs of trial and of trial preparation nor the risk of civil damages can be justified if the constitutional claim being asserted is not clearly established. The risk of distraction of officials from their governmental duties, the inhibition of discretionary action, the deterrence of able people from public service, and the difficulty of evaluating the subjective intent of officials whose decisions and thought processes are influenced by their experiences, values, and emotions are among the considerations that led the Court to adopt this view of qualified immunity. Id. at 816-18. And in its most recent case on qualified immunity the Court emphasized the need to minimize interference with the duties of government officials by stressing that qualified immunity questions should be resolved at the earliest possible stage of litigation. Anderson v. Creighton, et al., ---- U.S. ----, ---- n. 6, 97 L.Ed.2d 523, 535 (1987).
 
 
 19
 Finally, the claims against Secretary Block rest in part on a vicarious liability theory. In Ghandi v. Police Department of the City of Detroit, 747 F.2d 338, 346 (6th Cir. 1984), however, this court held that summary judgment was properly granted in favor of the Attorney General of the United States and the Director of the Federal Bureau of Investigation on the basis of qualified governmental immunity where the allegations against them 'were supported by nothing more than a claim of vicarious liability.' As to the plaintiffs' various claims that Secretary Block was personally negligent, the Supreme Court has held that due process concerns are 'implicated' only by 'deliberate decisions of government officials.' Daniels v. Williams, 474 U.S. 327, 88 L.Ed.2d 662, 668 (1986). No 'deliberate decisions' of the kind with which Daniels was concerned can be attributed to Secretary Block.
 
 
 20
 The defendants were entitled to summary judgment, and the denial of their motion for summary judgment is REVERSED.